JOE BLAKE V. THE STATE.

No. 1605. Decided December 1, 1897.

1. **Deposition—Manner and Form of Taking, etc.—Objections to, when and How Made.**

Objections must be in writing to depositions in criminal cases, and they are governed by the same rules as obtain in civil cases. Objections that the officer taking, etc., was not authorized to do so, is an objection which goes to the manner and form of taking. Our statute, article 2289, Revised Statutes, is imperative in its requirement that when a deposition has been filed, an objection to the form and manner of taking the same must be made and determined at the first term of the court thereafter, and if not then made such objection is waived and can not be made at a succeeding term.

## 2. Continuance—Alibi.

Defendant had applied for a continuance for certain witnesses by whom he swore he expected to prove an alibi. These witnesses were present, but were not placed upon the stand by him. But this fact is no reason why he was not entitled to a continuance to prove an alibi by other witnesses whose depositions on file showed that they would swear to the alibi.

## 3. Depositions—Filing—Motion to Suppress—Continuance.

Where the parties agreed that the depositions snould be returned on or before the Monday on which the court was to convene, and were returned to the clerk the day before, but were not filed by him until after the term commenced; Held, that a motion to suppress should have been made in writing and disposed of before defendant was required to announce ready. It was too late to make such motion orally in the midst of the trial and for the first time, when defendant sought to introduce the depositions in evidence. Moreover, after the depositions were suppressed, it was error to refuse to continue the case under such circumstances.

## 4. Alibi.

The fact that a defendant introduced witnesses to prove an alibi and failed to do so, is no reason why he should be deprived of the right to have the testimony of other witnesses as to that fact who, in their depositions, had sworn to the alibi.

## 5. Impeachment of One's Own Witness—Surprise—Injury.

Our statute, Code of Criminal Procedure, article 795, does not require, as at common law, that before a party could impeach his own witness he must have been surprised by the testimony of said witness; but it is clear from said statute that if the testimony of the witness be injurious to him he may attack such testimony in any manner except by proof of bad character, provided the antecedent circumstances are of a character as would lead·defendant to believe that the witness would not perjure himself, and this even though the witness may have told defendant that he would testify as he did.

APPEAL from the District Court of Wilbarger, on a change·of venue from Hemphill County, by agreement of parties. Tried below before Hon. G. A. BROWN.

Appeal from a conviction for murder in the first degree; penalty assessed at imprisonment for.life in the penitentiary.

Appellant was indicted as a·principal in the murder of Tom T. McGee, in the county of Hemphill, on the 23d of November, 1894. This is a companion case to Isaacs v. State, 36 Texas Criminal Reports, 505, where will be found a full statement of the material facts leading up to and attendant upon the murder of Sheriff McGee.

The matters connected with the disposition of this appeal are so amply and sufficiently stated in the opinion that further statements are not required.

*L. D. Miller, J. W. Smith*, and *Frank P. McGhee*, for appellant.

*Matlock, Cowan & Burney, H. E. Hoover, D. E. Decker*, District Attorney, and *Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life; hence this appeal.

It appears from the record that defendant was indicted in the District Court of Hemphill County, at the May term, 1895, for the murder of Tom T. McGee, alleged to have occurred at Canadian, in Hemphill County, on the 23d day of November, 1894; and at said term of court, at the request of the State and defendant, the venue was changed by the court to Wilbarger County. As a defense, defendant relies upon an alibi. He introduced testimony tending to show that on the 23d day of November, 1894 (the day the homicide occurred), he was at Dan McKenzie's, in Oklahoma Territory, eighty or ninety miles from Canadian, and that on the 21st and 22d of the same month he was at the village of Taloga, eight or ten miles from McKenzie's.

1. Appellant obtained the depositions of George H. Sexton, Jim Reilly, and M. K. McFadden, who lived in Oklahoma Territory. The depositions were filed in the District Court of Wilbarger County on the 29th of July, 1896. The first term of the District Court thereafter convened in August, 1896. Motion was made by the State to suppress the depositions on February 15, 1897. This motion was presented to the court on the 1st of March, 1897, before either party had announced ready for trial. The commission was directed to "any judge or chancellor of a supreme court of law or equity, or a commissioner of deeds for the State of Texas." The depositions were taken by a deputy district clerk and a United States Commissioner for D County, Oklahoma Territory. Appellant objected to striking out these depositions, because the State never filed any objections to the manner and form of taking said depositions, or in any way objected to the same, until March 1, 1897, the very day on which the case was called for trial; and because no notice of the motion in writing had ever been served on appellant or his counsel; and because, as he urged, it was agreed between counsel for the State and defendant that the depositions aforesaid might be taken before any United States Commissioner of D County, Oklahoma Territory, prior to the taking of said depositions, and same were taken in accordance with said agreement, and filed in this court, as aforesaid. The court sustained the motion made by the State, and suppressed said depositions; and appellant thereupon filed a motion to continue said cause on account of the suppression of said depositions, and in order to procure the depositions of said witnesses for the next term of the court. This motion was overruled by the court.

Under our statute and the authorities, the motion to suppress went to the form and manner of taking said depositions. The motion does not inform us of the reasons assigned by the court for the suppression of the depositions, but all the grounds assigned in the motion go to the form and manner of taking. Our statute (article 803, Code Criminal Procedure 1895) provides: "The same rules of procedure as to objections to depositions shall govern in criminal actions which are prescribed in civil actions, when not in conflict with this Code." Article 2289, Revised Statutes 1895, provides: "When a deposition shall have been filed in the court at least one entire day

before the day on which the case is called for trial, no objection to the form thereof or to the manner of taking the same shall be heard unless such objections are in writing and notice thereof is given to the opposite counsel before the trial commences; provided, however, that such objection shall be made and determined at the first term of the court after the deposition has been filed, and not thereafter." And we further refer to Pauska v. Daus, 31 Texas, 67; Adams v. State, 19 Texas Crim. App., 250; Lienpo v. State, 28 Texas Crim. App., 179. The above authorities show that an objection to depositions, because the officer taking the same was not authorized by law to take them, or some informality in the taking or return, is matter going to the form and manner of taking depositions. The statute above quoted we regard as imperative on this subject; and it can mean nothing less than that, if the depositions are filed, an objection to the form and manner of taking same must be made at the first term of the court thereafter; and if not then made, such objection is waived, and can not be made at a succeeding term.

The only question then remaining is: Were the depositions upon a material issue? As stated above, the principal, if not the sole, defense set up by appellant, was an alibi. Defendant is not speculating as to the materiality of the testimony of the witnesses whose depositions had been suppressed. We have their testimony in the depositions; and, if what they swear be true, it tends strongly to show that appellant was not present at the homicide. In explanation of the bill of exceptions, the trial judge states: The appellant had attached a number of witnesses who were present; and, when the attachment was sought, defendant made affidavit that he expected to prove by them an alibi, etc., and that he did not place them upon the stand, except one of said witnesses. It frequently occurs that a litigant, in making application for a continuance, swears that he expects to prove certain facts by certain witnesses, when in fact he fails to do so. This might be taken as a circumstance tending to show that he could not prove the alibi by the witnesses whose depositions had been taken, if it were not for the fact that they had already sworn to facts establishing the alibi. We do not understand and can not conceive the correctness of the proposition that because he stated that he expected to prove the alibi by other witnesses, and failed, therefore he is not entitled to a continuance to obtain witnesses who will unquestionably swear to the alibi, as shown in their depositions. We deem it unnecessary to add anything further on this branch of the case.

2. Defendant presented the following bill of exceptions, which is numbered 2 in the record, to the action of the court with regard to the depositions of certain of appellant's witnesses, to wit:

"Be it remembered, that on Sunday, the 28th day of February, 1897, the clerk of this court, by due course of mail, and in proper deposition envelope, received at the postoffice at Vernon, Texas, from the postmaster at said place, the depositions of Allen Mulkey, John Duke, George McGill, L. P. Hicks, and that the clerk of this court filed said depositions

·on the first day, same being the first Monday in March, 1897, among the papers of this cause. These depositions were taken and returned into ·open court upon the following written agreement, signed by the attorneys .for the State and defendant, namely: 'It is also agreed that the original direct and cross interrogatories, or duly certified copies thereof, may be ·sent by any of the parties hereto, or by the clerk of the District Court of Wilbarger County, to the clerk of the District Court or any United States Commissioner of D County, Territory of Oklahoma, who may take the answers of the various witnesses to said direct and cross interrogato- ·ries as required by law; and,. when so taken, the said officer so taking the ;same shall transmit them, as the law requires, to the clerk of the District ·Court of Wilbarger County, Texas; provided said answers as herein pro- vided for shall be taken and transmitted to the clerk of the District Court ·of said Wilbarger County, before the first Monday in March, 1897; and provided further, that none of the witnesses herein named shall have the ·right to act as that officer before whom the answers are taken; and pro- .vided further, that said officer taking said depositions shall not be related to any of the witnesses herein named either by affinity or consanguinity ·within the third degree, and when so taken as herein provided for, as also ·transmitted, may be read by either party on the trial of said case, subject, however, to any objection which may be made by either party to suppress ·or. quash for all lawful reasons, except the ones waived.' Signed by the ·attorneys for both the State and defendant, on the 26th day of January, .1897. And be it further remembered, that defendant's defense, among ·other things, was an alibi; and State's evidence shows that Dan Mc- .Kenzie's, where defendant was living, was at least ninety miles west out ·from Canadian, Texas, where Tom T. McGee was killed, on Friday, the 23d of November, 1894, and that said McGee was in fact killed after 8 o'clock p. m. of that day. And be it further remembered, that said depo- ·sitions were taken by J. H. Warren, clerk of the District Court of D ·County, Oklahoma Territory, by May Sexton, deputy of said J. H. War- ren, with certificate, and John Duke's depositions, as follows: 'Sub- ·scribed and sworn to before me, this 12th day of February, 1897, with seal impressed.' Among other statements not contradicted by the deposition itself, said John Duke testified: 'My name is John Duke. I live in ·county D, Oklahoma Territory. I am 40 years old. Am a farmer. Yes; I know Joe Blake. I have known him since October, 1894. I knew him in November, 1894. Yes; he was at my house on Friday, before he was arrested, on Monday. He came to my house about 1 o'clock p. m. that day. He came after some feed that he had there. He loaded up a load, and left about 4 o'clock p. m. Mrs. Brooks and her daughter Ella and my wife were there. There was no one with him when he came. Blake made his home at Dan McKenzie's. I don't recollect any dates. As above stated, I saw Joe Blake on Friday, before he was arrested, on Mon- day.' Allen Mulkey says his age is 34 years. Resides in D County, Okla- homa Territory. Farmer and stock raiser. Knew Joe Blake, defendant, since the latter part of October, 1894. Defendant ate dinner at wit-

382 38TH TEXAS CRIMINAL REPORTS. [Tyler,

ness' house on Saturday, before defendant was arrested, on Monday. Witness also saw defendant on Sunday, before defendant's arrest, on Monday. Saw him at Dan McKenzie's house, about sundown, Sunday evening. Saw defendant at Taloga, on Thursday, before he was arrested, on Monday. Talked at Taloga with witness about trading horses. Did trade bridle bits. He then came to house of witness the following Saturday, about 11 o'clock a. m., and ate dinner at witness' house. 'I next saw him at Dan McKenzie's house, the next day, Sunday, before he was arrested, on Monday, as above stated. Can't give any dates. I can only refer to the day from the time he was arrested. The time above stated is all the times that I saw him from the time that I saw him in Taloga, on Thursday, until I saw him at McKenzie's, the evening before he was arrested at Dan McKenzie's. I was at Dan McKenzie's on Sunday evening, before Blake was arrested, on Monday morning. I did not see any men ride up while I was there. Joe Blake was there when I went there. I went there to get a wagon sheet Dan had borrowed from me.' Witness Hicks did not remember dates, but saw Joe Blake, defendant, at Taloga in the fall of 1894, but says that the distance from Taloga, in D County, Oklahoma Territory, to Canadian, Texas, is about eighty-five miles. Witness McGill says: 'I am 48 years old. Live in D County, Oklahoma Territory. Am a farmer. I know Mattie McKenzie and Ella McKenzie. They came to my house to wash on Friday, November 23, 1894. They came about 9 a. m., and went away about 5 p. m., that day. Joe Blake also came there that day, about 10 o'clock a. m., and brought some clothes there for them to wash. He handed the clothes to one of the girls, and then come to where I was working on my stable. He talked with me about one-half hour; and, when he left, he said he was going to Dan McKenzie's, and take two wagon fellies that he had with him for Dan to fix his wagon. I do not know where defendant was on the 24th of November, 1894. He was at my house on the 23d of November, 1894. I know the general reputation of Dan McKenzie in this neighborhood for truth and veracity, and it is bad.' Be it further remembered, that in none of the certificates is the identity and credibility of deponents certified to by the officer taking the same, but a jurat is to all; and to the witness McGill's answers, the certificate would be a good one in a civil case; and the same is true to certificate to Allen Mulkey's answers. Affidavits were made by defendant as required by law to get witnesses. And be it further remembered, that said depositions were on file among the papers in this case before the State announced ready for trial, and that no written or oral motion was made to suppress said depositions before the trial began; that after the State had closed its case on its evidence in chief, and after the answers were offered in evidence by defendant, the State's attorney objected to said depositions; and that they be held for naught, because not properly certified to by the officer taking same, and because the witnesses did not fix definitely the time when they saw defendant, or that they knew when defendant was arrested. Defendant set up his agreement against State's right to quash or object to said depositions after

trial had begun, and also insisted, as a matter of law; a notice in writing should have been given to written exceptions to said depositions, because same were received on February 28, 1897, and it was no fault of defendant that same was not filed on February 28, 1897, when first received by the clerk. The court sustained objections to all of said depositions; and the defendant then asked to be permitted to withdraw his announcement of ready for trial, and continue the case to get his testimony. The court would not allow this, but compelled the defendant to proceed, or be proceeded against, in the trial. To the action of the court in sustaining State's objection to above named depositions, and in causing defendant to go on with the trial after same were thus suppressed, defendant at the time duly excepted, and now here tenders this bill, and asks that the same be allowed and filed as a part of the record in this case."

"The foregoing bill of exceptions allowed, with the following explanation, viz.: All of said witnesses, except the witnesses McGill and Hicks, fixed the date when they saw defendant in D County, Oklahoma, on a certain day before Blake was arrested, and do not show they know when he was arrested; and, further, the testimony of defendant's witnesses Dan McKenzie, Stella McKenzie, and May McKenzie, as given on the trial of this cause, that the testimony of witnesses who testified that defendant was in D County, Oklahoma, on the 21st, 22d, 23d, and 24th of November, 1894, was untrue; and, further, the witness L. P. Hicks was present and placed under the rule as a witness in the trial of this case.

⎯ [Signed]                          "G. A. BROWN, Judge."

By reference to said bill of exceptions, it will appear that the agreement made provided that said depositions should be transmitted to the clerk of the District Court of Wilbarger County on or before the first Monday of March, 1897. The point is made by the State that the depositions were not filed until the first Monday in March, the day that court convened; and that, consequently, under the statute the State was not required to give notice of the motion to suppress the said depositions, but that it could make said motion at any time; and that the motion to suppress, made during the trial, when said depositions were offered by the appellant in evidence, was in due time. It is true that said depositions were not filed by the clerk until Monday, after court began. The bill, however, shows that they were received by the clerk on the day before, and, for all practical purposes, they were in court one day before the meeting of the District Court; but, at any rate, the agreement did not refer to their filing, but simply to their reception by the clerk. So that it follows that any motion to suppress said depositions, going to the form and manner of taking, should have been made in writing, and disposed of before the appellant was required to announce ready. In this case the defendant had no notice that such a motion would be made at all until in the midst of the trial, and when he offered to read the depositions as evidence; and then, for the first time, he was confronted with an oral motion to suppress said depositions. At that juncture the court should

have either refused to suppress said depositions, or, if he did suppress the same, have granted appellant's motion to withdraw the announcement of ready and continue the case. The court, however, overruled appellant's motion in this regard.

The court, in his explanation to said bill of exceptions, shows that he excluded said depositions because all of the witnesses, except McGill and Hicks, fix the date when they saw defendant in D County, Oklahoma Territory, on a certain day before Blake was arrested, and do not show when he was arrested. In reply to this, we would simply state that this afforded no reason for the exclusion of said testimony. The date of Blake's arrest could be fixed, and was in fact fixed, by other witnesses, on Monday, November 26, 1894. The killing occurred on November 23, 1894. These witnesses, in the deposition, swear to having seen appellant at Taloga, in Oklahoma Territory, and in that vicinity, on the 22d, 23d, and 24th days of November, 1894, prior to the arrest of defendant; that is, prior to the 26th of November. The court further states that the testimony of the witnesses Dan McKenzie, Stella McKenzie, and May McKenzie, as given on the trial, shows that the testimony of said witnesses proving an alibi was untrue; and, further, that the witness Hicks was present, and placed under the rule as a witness. The question here was as to the admissibility of certain testimony. The court proposes to sustain its action in rejecting the evidence, upon the ground that it was not true, basing this conclusion upon the testimony of other witnesses in the case. The appellant may have introduced said witnesses to prove an alibi, and they may not have sustained him. Still, that did not deprive him of the right to have other witnesses, by whom he proposed to prove that fact, and who, in their depositions, had sworn to the fact of alibi. We hold that the action of the court in suppressing these depositions in the midst of the trial, without previous notice to the appellant, was not authorized by law, and that the effect of the ruling of the court was to take an unfair advantage of the appellant; and certainly, after suppressing the depositions, the court should have granted the motion of appellant to withdraw his announcement of ready, and continue the cause. Unquestionably, the testimony was material; and, as we have discussed this matter in treating of the former bill of exceptions, it is not necessary to reiterate here.

3. It appears from bill of exceptions number 11 that the appellant introduced Stella McKenzie, by whom he proposed to prove an alibi, but that said witness not only failed to make such proof, but testified to facts strongly contradictory of the defendant's theory of an alibi. It also appears by said bill that counsel for appellant obtained the permission of the court to consult with said witness as to what she would swear upon the witness stand, and that she had informed counsel for appellant that she would testify to the facts sworn to by her when placed upon the stand, which facts, as before stated, were very detrimental to the cause of the appellant. After having laid the predicate, appellant proposed to prove by J. R. Campbell and H. L. Hall that

Stella McKenzie had testified in the Harbolt Case—(a companion case to this), and that upon that trial she swore that the defendant was at the house of Dan McKenzie, in D County, Oklahoma Territory, on the 23d day of November, 1894, and that the defendant went to John Duke's for feed on that day, only a few miles away from Dan McKenzie's, and returned that night, and that McKenzie lived eighty or ninety miles from Canadian, Texas; that defendant was there Saturday night, November 24th, and was there Sunday morning, before any men rode up there; that he rode off some time that day somewhere, and came back there that night, and was there on the night of the 23d of November, 1894. Counsel for the State objected to this proof, upon the ground that the defendant could not impeach his own witness, and the court sustained the motion of counsel, and refused to permit Campbell and Hall to testify to the facts sworn by Stella McKenzie on the Harbolt trial. The trial judge sustained the objection of the State upon the ground that counsel had consulted with his witness and knew what she would swear, and therefore he was not surprised by her testimony, and because of this, could not impeach his witness. Article 795 of the Code of Criminal Procedure of 1895 provides: "The rule that a party introducing a witness shall not attack his testimony is so far modified as that any party, when facts stated by the witness are injurious to his cause, may attack his testimony in any other manner, except by proving the bad character of the witness." At common law this could not be done unless the party was surprised by the testimony of his witness, or unless the party had been misled by a witness, and, when put upon the stand, testified, not in his favor, but against him. Our statute does not provide or require that the party must be surprised; but it is clear that, if the testimony of his witness is injurious to him, he can attack his testimony in any method other than proof of bad character. We are not to be understood as holding that where the party introduces a witness knowing that the witness is going to testify against him, and without any reason to believe that the witness will testify in his favor, we would reverse the judgment because the party, under such state of facts, was deprived of the right of impeaching the witness by proof of contradictory statement. But in this case this witness, Stella McKenzie, had testified in the Harbolt Case. She had sworn to facts, which, if true, established an alibi for the defendant. Now, the defendant had a right to believe that she would not perjure herself by swearing to facts in conflict with those already testified to; and this, although she may have told him that she would so testify. It frequently occurs that a witness will deny knowing anything about a fact or case, making an effort not to be used as a witness, but when placed upon the stand and sworn, tells the truth. Was appellant surprised? Being informed that she had deliberately sworn to facts sustaining his alibi, would he not have been surprised if she had sworn otherwise; especially to facts and circumstances disproving his alibi. We are of opinion

38 Texas Crim. App.—25

that the court erred in not permitting this witness to be impeached in the manner sought by the appellant.

For the errors discussed above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*