## ED HARRIS v. THE STATE.

### No. 1923.    June 26, 1912.

**1.—Murder—Evidence—Impeaching Own Witness.**

Where, upon trial of murder, the State claimed that defendant had killed deceased with a stick of wood, etc., and the defendant's witness had testified that another person and not the defendant struck the deceased the fatal blow with a chair, and the State on cross-examination elicited the fact that witness saw defendant throw something toward the deceased using the expression, "Now God damn you take that," it was reversible error not to permit the defendant to show by the examining trial testimony that this witness had not testified to this latter fact at the examining trial, for the purpose of impeaching her on the theory that the witness had testified to an injurious fact against him in the face of her previous testimony given at the examining trial.

**2.—Same—Rule Stated—Impeachment.**

The defendant has the right, even where he places a witness on the stand, to expect the witness to testify upon his trial as he had testified upon a former trial, and where the witness had testified to an injurious fact against him he has the right to impeach the witness in regard thereto, and this whether the witness became a State's witness or not.

**3.—Same—Evidence—Convict—Pardon—Record of Conviction.**

Where, upon trial of murder, the State on preliminary examination proved by defendant's witness that he had been previously convicted of felony, the defendant had the right under the circumstances to have the record of conviction produced before the witness could be disqualified, and it was error not to permit the defendant to have the witness testify to a material fact in his defense. Following White v. State, 33 Texas Crim. Rep., 177.

**4.—Same—Misconduct of Jury.**

Where the judgment is reversed and the cause remanded upon other questions, the misconduct of the jury need not be considered.

**5.—Same—Charge of Court—Aggravated Assault—Deadly Weapon.**

Where, upon trial of murder, the State contended that the defendant killed the deceased with a stick of wood about six to ten inches long and two or three inches thick by throwing it at him and striking him on the head, and there was no evidence that this stick of wood was a deadly weapon or that defendant struck deceased with the intention to kill him, it was reversible error not to submit a charge on aggravated assault.

Appeal from the District Court of Hill.    Tried below before the Hon. C. M. Smithdeal.

Appeal from a conviction of murder in the second degree; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*W. C. Morrow, Jr.,* for appellant.—On question of excluding im-

peaching testimony: Baum v. State, 60 Texas Crim. Rep., 638, 133 S. W. Rep., 278; Renn v. State, 143 S. W. Rep., 173; Blake ·v. State, 38 Texas Crim. Rep., 377; Woodward v. State, 42 Texas Crim. Rep., 205; Jeter v. State, 52 id., 216.

On question of not introducing judgment of conviction to disqualify witness: Deckard v. State, 57 Texas Crim. Rep., 359, 123 S. W. Rep., 418; King v. State, 57 Texas Crim. Rep., 363, id., 140; art. 855, Branch's Digest.

On question of court's failure to charge on aggravated assault: Grant v. State, 143 S. W. Rep., 930.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, his punishment being assessed at eight years confinement in the penitentiary.

1. Bill of exceptions No. 1 recites that the indictment charges appellant with having murdered W. B. Thomas by striking him with a stick of wood or some blunt instrument. The deceased was a white man about thirty-six years of age. The defendant is a negro about twenty-seven or twenty-eight years of age. The difficulty in which deceased lost his life occurred on October 8, 1911, on a farm owned by Couch. There was evidence showing that on the day of the difficulty there were gathered on the farm at a cabin quite a number of negro men and women; that about noon the deceased, in company with two other white men, came to the cabin where the negroes were. There was testimony that the negroes were engaged in various games of cards and dice, and evidence to the effect that deceased had a quart of whisky in the bosom of his shirt, and at the time was not sober. There was testimony to the effect that while he was in the house deceased stepped on a negro woman's foot, and some words passed between them, after which he was taken away by his friends. There is further evidence that he came back to the cabin and was pushed out of the door, and after he was pushed out he picked up a chair and assumed a striking attitude toward a negro named Ben Johnson. Some of the evidence is to the effect that Johnson took the chair from deceased and hit him on the head with it. This, however, was an issue. There was evidence also that a number of missiles, such as tin cans, etc., were thrown at deceased, and some of the witnesses testified that defendant threw at deceased a stick of wood, which struck him on the head. The State's theory was that the blow from this stick of wood caused the death of the deceased. There was evidence also that after deceased was struck with the stick of wood he went away and died about eight days subsequently. The postmortem examination was made in which his skull was sawed open, disclosing a fracture and a blood clot on the brain, which the doctors testified produced death. There was evidence given

by two physicians to the effect that the blow which fractured the skull of deceased and produced his death could have been inflicted with a chair. Before the death of deceased, and before the doctors knew of the blow on his head, they diagnosed his case as one of excessive alcoholism. Some of the witnesses testified that Ben Johnson struck deceased over the head with a chair, which was an ordinary wooden chair with the back broken off, and it was the theory of defendant, supported by evidence, that the deceased met his death at the hands of Ben Johnson. The defendant testified that he did not strike the deceased with a stick of wood. The bill further recites that defendant placed on the witness stand in his behalf Linda Crogie, and on direct examination proved by her that she had known deceased all his life; that she was present at the time the trouble came up, and that Ben Johnson struck the deceased with a chair, and that this blow was inflicted on the head. He further proved by her that at the time she saw Ben Johnson raise the chair over deceased that she said, "What in the world are you doing? Don't you know this is Mr. Thomas' son you are trying to kill here and murder? Don't you know it?" I says, 'Ben Johnson, don't do that, that is Mr. Thomas' son, because he is a mason, and I know well he was a good boy.'" Here the examination of this witness by the defendant ceased. On cross-examination the State proved that she saw the defendant Harris there. The witness further testified that she "could not say positively that it was a stick of wood, because when he reached down the corner of the house was between me and him, and he got up and drawed back, and when he throwed it he said, 'Now, God-damn you, take that.'" (The witness standing up in the witness chair drawing her hand back indicating the manner in which she said the defendant threw the missile.)

After this cross-examination had ceased the defendant on redirect examination of said witness, in order to contradict her as to the matter she testified on cross-examination in regard to appellant, and about which appellant had not on direct examination asked the witness any questions, and for the purpose of impeaching and contradicting her, the testimony being damaging and injurious to appellant, and the witness being as to the matter brought out on cross-examination a witness not for the defendant, but for the State, the defendant sought to prove by her what her testimony was on the examining trial of this same case, and in order to prove by the witness what her testimony was on the examining trial asked the following questions:

"Q. Isn't it a fact that you testified on the examining trial that this man here was not the criminal, but that Ben Johnson was the criminal?" To this question the State objected for various reasons, which are set up and unnecessary to repeat, which were sustained by the court, the contention of appellant being this was new matter, and on the matter inquired about in regard to appellant the State had made her a State's witness and appellant had the right to cross-

examine her upon new matter brought out by the State, and further that even if she was defendant's own witness, she having testified to a matter injurious to him he had a right to contradict her. Had she been permitted to testify and the defendant had been permitted to show what her examining trial testimony would have been, it would have developed as follows: "Q. You know Will Thomas when he lived? A. Yes, sir. Q. Knew him all his life? A. Yes, sir. Q. Ever since he was a little boy? A. Yes, sir. Q. Were you down there that day this trouble came up? A. Yes, sir. Q. Tell us all you saw. A. I haven't got much to tell of this trouble; the real criminal ain't here. Q. Which one is the criminal? A. Ben Johnson. Q. Just tell all you know. A. It was Ben Johnson, was the one. Q. What did Ben do? A. He hit him over the head with a chair. Q. Where did he hit him? A. Right upon the top of the head. Q. Where is Ben now? A. I don't know. Q. Is he gone? A. I guess so. Q. Where were you when the fuss came up? A. Out at Lee Watson's. Q. That little house in the yard? A. Yes, sir. And they hollowed there was a fight on, and when I ran outdoors I run over and seen him throw up his hands and I told them to let that boy alone, that he was Mr. Thomas' boy. Q. What did they say? A. Never said nothing, just stopped right now, and there was a white boy stepped up as I was talking and caught hold of him and pulled him out. Q. Did you know that boy? A. No, sir. Q. Do you know Ed Harris, that negro there? A. No, sir. Q. Did you see him there that day? A. No, sir; I never paid no strict attention to nobody but this white boy. Q. You didn't see him when he throwed that stick of wood? A. No. Q. You saw Ben Johnson hit him with a chair? A. Yes, sir. Q. Did it knock him down? A. No, sir; he was kind of half bent as he come out of the door and he struck him with the chair across the head—there was so many—— Q. Did you see anybody hit him as he come out the door? A. No, sir; he had done come out the door and turned around. Q. Did you see this negro there that day? (referring to defendant). A. No, sir. Q. Did you see Pork Chops? A. No, sir."

The bill further recites that the witness Crogie was sworn by the State on the examining trial and testified as a witness at such trial, and the defendant, at the time he sought to ask the witness questions in regard to her testimony before the examining trial, had before him the testimony of said witness before such examining trial, and in asking the questions to said witness about her testimony on such trial framed the questions in accordance with her answers given at such trial and asked her if she did not make such answers; and it is a further fact that said witness testified at said examining trial as set out above and the testimony at such examining trial, which the defendant had before him at the time of the trial of the case, was that which was taken down at the time of such trial by the official court stenographer and was correct as set out above. It is alleged

further this was very material testimony, showing what her testimony was before the examining trial, because the witness swore on cross-examination directly that she had seen the defendant hit the deceased with a stick and cursed him when he did so, and it was very material for the defendant to show that the said witness had testified to the contrary at a former time in the same case, and it was further material that the defendant be allowed to contradict the witness by showing her testimony before the examining trial, because the testimony of the witness was most damaging and injurious, especially so on account of the manner in which she told it, to wit: standing up in the witness chair and gesticulating and saying that when defendant threw at the deceased, he said, "Now, God damn you, take that," the witness drawing back her hand and indicating the manner in which she says the defendant threw at deceased.

This is enough of the bill to show it is as full as necessary and ample to bring the matter in full review before the court. There was another bill or two in this same connection growing out of this same matter and the court stenographer was offered as a witness to contradict the witness Crogie, which was also refused. The ruling of the court was clearly erroneous. The defendant put the witness on the stand to prove that Ben Johnson struck the deceased with a chair. When he did that he asked her no further question. The State, upon cross-examination, elicited the fact from her that she saw appellant throw something, and use the expression, "Now, God damn you, take that." In regard to this matter she became a State witness and subject to impeachment by defendant for that reason. This is not debatable. Even had she been defendant's witness, he would have had the right to impeach her on the theory that she had testified to an injurious fact against him in the face of her previous testimony given at the examining trial. The defendant had the right, even had he placed her on the stand as his own witness, to expect she would testify upon this trial as she had testified upon the former trial; and had he used her as a witness and she had testified to injurious facts, he would have had a right to impeach her in regard to the matter. This question was thoroughly discussed and settled correctly in Blake v. State, 38 Texas Crim. Rep., 377. What has been said here in regard to this bill also applies to bills Nos. 2 and 3, bringing up this same matter from other witnesses.

2. Another bill recites the facts of the case as preliminary to the question set out in the bill practically as set out in the bill already discussed as to attending facts and circumstances, and then recites that the defendant called to the witness stand the witness George Brown. The witness having been sworn, was asked one or two preliminary questions by defendant, when State's counsel asked permission of the court to propound to witness other preliminary questions. This was allowed and the State propounded the following questions and received the following answers: "Q. You have been to the peniten-

tiary? A. Yes, sir. Q. What did you go for? A. For fighting. Q. Went to the penitentiary for fighting? A. Yes, sir.

After asking said questions and receiving these answers, the State submitted the disqualification of the witness and the court held the witness disqualified and refused to permit him to testify further. Appellant's contention in the bill is, and his objections were, that the evidence was insufficient to disqualify, no judgment of conviction of the witness having been introduced in evidence as required by law, and it not having been shown from what State the witness had gone to the penitentiary, from what county, nor in what State the witness was convicted of an offense which caused him to go to the penitentiary, nor from what State and county he had been sentenced, and defendant tendered his bill of exceptions. Then follows the testimony appellant expected to elicit from the witness, which may be disposed of by stating it was very material. In this the court erred. It has been held, and correctly, that it is a valid objection to the competency of a witness that he has been convicted of a felony and served a term in the penitentiary, and has not been pardoned nor restored to citizenship. It is also the rule that the best evidence of this incompetency is the record of conviction. It has also been held that other testimony as to the fact of conviction, though it may be an admission or statement of the proposed witness himself, is not admissible if objected to, unless objection to that mode of proof is waived. In White's case, 33 Texas Crim. Rep., 177, the above rule was laid down and the authorities cited. When the State proved by the witness himself that he had been previously convicted, the defendant had the right under the circumstances to have the record of conviction produced in order to disqualify the witness, but when the State developed the fact by the testimony of the witness that he had been previously convicted, the defendant urged and insisted upon the record of conviction as a means of disqualification. This he had a right to do, and he should have been sustained and the witness permitted to testify. See White v. State, supra. The rule laid down in White's case has been followed wherever the objection was made in a timely manner. We hold that the court was in error on this proposition.

3. Another bill which is very lengthy recites the misconduct of the jury. In view of the fact that the case is reversed upon other questions, this matter is not discussed.

4. We are of opinion the court erred in not charging the law in regard to aggravated assault. The State's contention was that there was a general trouble at the negro cabin where negroes were congregated and gambling was in existence. That deceased came upon the scene with another white man; that he was drinking sharply, if not drunk, and perhaps others were drinking, and that deceased brought on the trouble first by stepping on the foot of one of the negro women is not questioned. It brought on a general row in which deceased was put out of the house. After getting out of the house he

picked up a wooden bottomed chair from which the back had been broken and struck at or struck Ben Johnson; that Ben Johnson took the chair from the deceased and struck him once, and some of the evidence shows twice on the head with the chair. The State's contention is further that appellant picked up a stick of wood which had been burned, about six to ten inches long and two or three inches thick and threw it at deceased, striking him on the head. It is further in evidence that other parties struck the deceased, or were throwing at him at least with brickbats and other missiles. The defendant's theory was that he did not engage in the difficulty, did not throw a stick at deceased, but that the blow which appellant received and which perhaps resulted in his death was inflicted by Ben Johnson. The evidence further shows that Ben Johnson immediately disappeared and his whereabouts has not been ascertained by any of the witnesses who testified. The sheriff and his staff have been investigating his whereabouts since the trouble and have been unable to locate him. This evidence called for a charge on aggravated assault. If appellant threw the stick which struck deceased with no intention of killing him, and it was not what might be usually considered a deadly weapon, then appellant would not be guilty of the homicide, unless it clearly appears that he intended to kill. Such is the declared law by the statute. Upon another trial under the facts as contained in this record, a charge on aggravated assault should be given.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*