TOM COOKE v. THE STATE.

No. 12750. Delivered November 27, 1929.
Rehearing denied February 5, 1930.
Reported in 24 S. W. (2d) 427.

The opinion states the case.

*Scott & Jaworski* and *Joe W. Taylor,* all of Waco, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is transporting intoxicating liquor; the punishment confinement in the penitentiary for two years.

The state's witness, Claude Harper, was employed by one McCrary as a truck-driver, McCrary being engaged in the transfer business. Harper testified that he was instructed to go to Fairfield with his truck for the purpose of bringing a load back to Waco; that upon reaching Fairfield, pursuant to his instructions, he went to a drugstore where he met a man who told him to follow a Chrysler roadster; that a Mr. Pickett was one of the men in the roadster, but that there were two men riding with him whom he did not know; that they went to a house where his truck was loaded with fifty cases of jars packed in cartons; that he did not know who loaded the truck, but that the men who had directed him to the house said that the jars contained fruit; that he then came from Fairfield to Waco with his load, being accompanied by a Chrysler roadster like the one he had followed to the whiskey; he said that it was "either the same one or one just like it," and that the same occupants of the car at Fairfield were in the car that accompanied him to Waco; that Pickett rode with him on the truck to the limits of the city of Waco; that between Fairfield and Teague the Chrysler roadster stopped and appellant asked him (the witness) why he did not go faster; that he replied that he was trying to get in with the stuff but that the truck was not running right; that appellant said "get there as fast as you can"; that from that time he did not see appellant again; that as he was going to Waco some officers passed him about four times, slowing up like they were going to stop him; that they drove along by his side for a short distance and then drove on in front of him; that Pickett, who was riding on the truck with him, carrying a pistol in

his hand, directed him to turn around, which he did; that he drove back three or four hundred yards and came on in to Waco on what is known as the Marlin road; that he carried his load to a house in Waco between Twenty-fifth and Twenty-sixth Streets on Bosque Boulevard; that he and Pickett unloaded the cartons containing the jars; that when he turned back at the command of Pickett the Chrysler car drove on into Waco; that he didn't know he was transporting whiskey. On the occasion in question, officers left Waco between eleven and twelve o'clock at night and drove out on the Springfield road. About 3 a. m. the truck driven by the witness Harper appeared. In the meantime the officers had been driving up and down the road waiting for the truck to come along. Upon seeing the truck coming toward Waco, the officers passed it, drove on about half a mile and then turned back. They then proceeded to follow the truck and a Chrysler roadster, which was between them and the truck. The roadster was about three hundred yards behind the truck. They drove around the roadster and took position between it and the truck. Presently the truck slowed down like it was going to stop and the officers drove on ahead. In a short while the Chrysler roadster passed the officers and stopped at a place on the Springfield road. The officers did not know who was in the Chrysler. They continued to follow the truck but presently passed the truck on a hill. The Chrysler roadster then took a position between the car driven by the officers and the truck. The officers thought the truck was still following them and stopped at a point in the road in order to let the truck pass ahead of them. However, the truck did not appear but the Chrysler did. The officers turned around and drove back to a point where it appeared that the truck had turned around and endeavored to track it from this point in to town, but lost track of it. The officers then drove to a cafe in the city of Waco where they got out for the purpose of getting some coffee. While they were drinking the coffee, appellant and a companion walked in the cafe. Leaving the cafe, the officers saw the Chrysler that they had seen out on the Springfield road parked nearby. After conferring with Harper, the officers secured a search warrant and searched the house on Bosque Boulevard pointed out by Harper as the place where the load had been delivered. Mrs. Pickett was present at the time the search was made. Seventy-two gallons of corn whiskey were discovered. About 6:30 a. m. the whiskey was taken to the court house, unloaded and placed in the vault. While the whiskey was being carried to the vault by means of a hand truck, the district

attorney stepped out of the sheriff's office into the hall. Appellant was sitting just across from the sheriff's office. The district attorney sat down by him. Tears came into appellant's eyes and he said; "Mr. Holt, (referring to the district attorney) that is my money that is tied up in that whiskey. I feel sorry for that poor old s—of-a-b— and have felt sorry for him from the day he came back from the war, and I was trying to give him a start." The district attorney testified that appellant then began to tell him about the sheriff being out on the road. He said that appellant stated to him that he saw the sheriff and knew who it was when he first passed them; that it was a good thing that the officers hadn't stopped them; that if they had tried to stop them they were ready for them. The district attorney went into the sheriff's office and told him what had transpired between him and appellant. Appellant was requested to come into the sheriff's office, which he did. The sheriff asked appellant what he had been talking about, saying to appellant; "I never would have suspected you if I had not seen you in the cafe and if we had not come out and seen that Chrysler car." Appellant replied: "Mr. Stegall, (referring to the sheriff) you are not going to have any trouble with me. I never gave an officer any trouble in my life." At this point appellant made another statement which the district attorney testified to as follows:

"And then he proceeded to tell as to why he was out there. That Roy Pickett was up against it, and that he had just gone with Roy to get this stuff to keep the hijackers off of him, and he said that he had advanced the money with which to pay for the liquor. We talked some little time then, and I do not know just who left first, but we left, and Tommie said that he could get hold of Roy Pickett and would bring him down there, and in about thirty minutes or an hour Roy Pickett came into the office and I talked to Roy Pickett a little."

Appellant offered no testimony.

The court charged on the law of principals. After giving the usual definition of principals, the jury were charged that all persons who shall engage in procuring aid or means of any kind to assist in the commission of the offense while others are executing the unlawful act are principals. This charge was timely and properly excepted to, with the request that the court instruct the jury that if appellant furnished the money with which to buy the whiskey such act would not of itself make him a principal unless he was personally present at the time the whiskey was transported. Further the court

was requested to define accomplice and instruct the jury that if they had a reasonable doubt as to whether appellant was an accomplice he could not be convicted as a principal. We understand the rule to be that if appellant furnishes the means by which the offense is committed, but is absent at the time of its commission, and is not then doing something in furtherance of the common design, so as to make him constructively present, he cannot be convicted as a principal. Hext v. State, 282 S. W. 242, and authorities cited. At some point on the trip to Waco, whether in McLennan County or another county, appellant was present in the Chrysler roadster and had urged the transporter of the whiskey to hurry on to Waco. The Chrysler car in which appellant was driving at the time he had the conversation referred to proceeded in to Waco. It is true that the witness Harper testified that appellant could have gotten out of the car and walked into Waco, but there is no testimony that appellant in fact did this. A short while after the officers left the point in the road where the truck had turned back they drove to a restaurant in Waco where they had remained but five minutes when appellant and a companion entered. Leaving the restaurant they saw the same Chrysler roadster parked outside nearby. On the same morning that the whiskey was being placed in the vault in the court house appellant said that he had bought the whiskey, and, in substance, that he had aided in transporting it to Waco for the purpose of keeping hijackers from getting it. He admitted that he had seen the officers on the road when they were following the truck. When, in effect, accused by the sheriff of being on the road, he offered no denial. These facts were not contradicted. We think they conclusively show that appellant was present when the whiskey was being transported. The giving of the charge here complained of was proper under the facts.

The fact that Harper may not have known that he was transporting whiskey would not excuse appellant. One may be a principal who employs a person who can not be punished to commit an offense. Art. 68, P. C. Duncan v. State, 215 S. W. 853. Hence it was not error for the court to refuse to instruct the jury to acquit appellant if they had a reasonable doubt as to whether the witness Harper was an innocent agent.

Nor do we think the court erred in declining to instruct the jury that if they had a reasonable doubt as to whether the whiskey was transported in McLennan County that appellant should be acquitted. We find no evidence in the record to the effect that appellant's con-

nection with the transportation of the whiskey ceased before it entered McLennan County. On the other hand we think the evidence is conclusive to the effect that appellant accompanied the truck in McLennan County.

There being no evidence raising the issue, the court properly refused to charge on alibi.

Complaint is made of the failure of the court to charge on the law of circumstantial evidence. We think the evidence of the transportation of the whiskey is direct. If we are in error in this, we are of the opinion that the facts proven are in such close juxtaposition to the main fact as to be equivalent to direct testimony. Branch's Annotated Penal Code, Section 1874. The officers went to the house pointed out by Harper as the place where the whiskey was unloaded. They found a large quantity of whiskey. Appellant admitted that he had bought the whiskey, and made a statement to the effect that he had gone with Pickett for the whiskey. He admitted that he saw the officers on the road the night they were following Harper's truck. According to Harper's testimony, appellant had gotten out of the Chrysler roadster while they were traveling toward Waco and urged Harper to hurry.

Attached to the motion for a new trial is the affidavit of a witness claimed to be newly discovered. It was averred in the affidavit, in substance, that the witness knew appellant; that witness was at the drugstore on the night Harper drove there in a truck; that the witness saw the occupants of the Chrysler car Harper followed; that appellant was not in the car. The motion for new trial contains averments relative to the newly discovered evidence. Assuming that the diligence was sufficient, we are of the opinion that, considered in connection with the testimony heard upon the trial, that the learned trial judge was warranted in concluding that the new testimony was not such as would likely change the result if produced upon another trial. Appellant offered no defense. The evidence showing guilt was uncontradicted, and, in our opinion, plainly connects appellant as a principal with the offense. The action in overruling a motion for a new trial, based on newly discovered evidence will not be revised unless it is apparent that the discretion vested in the trial judge has been abused to the prejudice of the accused. Coleman v. State, 300 S. W. 59.

Failing to find reversible error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—One Harper drove a truck to Fairfield from Waco, leaving about 5:30 P. M. The distance would be sixty or seventy miles. He testified as a witness, and said that his instructions were to go to a drug-store on the square at Fairfield; that he there was instructed to follow a car, which he did; said car was a Chrysler roadster with three men in it; one man was Roy Pickett. Harper followed said car to a place where he and Roy Pickett loaded in the truck fifty cases of what was called canned fruit, but later was found to be whisky. After loading same Harper started back to Waco. At a point between Fairfield and Teague, the same Chrysler car stopped in front of his truck, and this appellant got out of it, asked Harper why he did not go faster, what was the matter with his truck, and told Harper to get there as fast as he could. Harper further said that on up the road he met the party of officers and recognized several of them. The testimony shows without contradiction that the Chrysler roadster was following the truck, part of the time ahead of it, and that said car passed and re-passed that containing the officers. Harper further testified that at a point about three miles from Waco Pickett "flagged him" and got on the truck with him; that Pickett had a sixshooter in his hand when he got on the truck; that he told Harper to turn the truck around, cross over to another road, and that they came into Waco on this other road. When they got to Waco Pickett directed Harper where to drive his load and helped him to unload it. The load was seized by the officers the morning following and taken to the court house. The officers testified that they met this truck accompanied by the Chrysler roadster on said road about 3:00 A. M., and they detailed the movements of both until the truck evaded them. They said they followed the track of the truck to Waco, and when they got there they went to a cafe. This could hardly have been later than 4:00 o'clock in the morning. Directly after they entered the cafe appellant and another man came in. The officers went out and found parked the same Chrysler roadster which they had seen with said truck on the Fairfield road. They had taken its number. Not only this, but when the whisky above referred to was being brought into the court house, appellant was observed there, and told a witness, who testified

to it, that his money was in that whisky, and further stated that "they saw the sheriff out on the road, knew who he was when they passed him,—and that it was a good thing the sheriff had not stopped them, that they were ready for him." Appellant later told why he went "over there" with Roy Pickett to get this stuff, "to keep the hijackers off him."

This much is said to make plain the proposition that appellant not only furnished Pickett the money to finance the purchase of the whisky, but that he was present with Pickett in the same car during the transportation of the liquor in question from Fairfield to Waco in McLennan county, and that when they met the McLennan county officers a few miles out from the city Pickett got out of the Chrysler roadster, got on the truck with Harper, and that his two companions drove the Chrysler roadster into Waco, evidently following the officers' car to see what developed or to aid Pickett if he was further hindered.

What we have said also makes plain that we are of opinion the court did not err in his charge on principals, nor in refusing to charge that if appellant's connection with the transportation of the liquor ceased before the whisky entered McLennan county, the jury should acquit. Our statement in the original opinion to the effect that a part of the charge on principals should not have been given, is withdrawn. We find nothing in the record combating the proposition that appellant was a principal both in fact and law, nor is there contradiction in the testimony of his personally accompanying the truck as one of the occupants of the Chrysler roadster to where they met the officers some three miles from Waco.

The contents of bills of exception 1 and 2 evince no error. For all the bills inform this court as to matters therein objected to, same may have been germane to testimony before the court and known by the trial court to be material. It was entirely proper to show why Harper went to Fairfield, and what an occupant of the Chrysler roadster said to him on the way back to Waco.

Appellant's statements, fully set out in our original opinion, and to some extent above, affirmed his presence during said transportation not only while near Fairfield, but after they met the officers in McLennan county. Said admissions were direct evidence of his guilt, and as such relieved this case from any need of a charge on circumstantial evidence. As to the identity of the liquor, same was present when appellant referred to it and disclosed his interest in and connection with it. Pickett made the statement in appellant's pres-

ence that said whisky had by the officers was his. We think the evidence so overwhelmingly showed the presence of appellant during the transportation of liquor in McLennan county, that the matters set out in the affidavit of the Freestone county witness as to what he saw or did not see in Freestone county on the night the whisky was loaded and removed, were such as that a decision of the trial court against the proposition that had same been before the jury a different result would not have been likely, was not an abuse of the discretion of the trial judge.

The motion for rehearing will be overruled.

*Overruled.*

### ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant calls attention to the fact that upon cross-examination of state's witness Harper he admitted that he had been in the "federal penitentiary." Based upon this alone it is urged here now for the first time that we should hold Harper to have been disqualified as a witness, and should discard his testimony, in which event it is claimed the other evidence is insufficient to support the conviction. This point has never been considered, it being now raised for the first time. It was not claimed upon the trial that Harper was incompetent to testify. No preliminary questions seem to have been directed towards developing facts to disqualify him, and when it developed on cross-examination that he had been in the "federal penitentiary," it does not appear that any motion was made to withdraw the testimony on direct examination. No record proof of his conviction is shown. No bill of exception is found complaining of anything incident to the matter. The jury was instructed to consider Harper's conviction of a felony only in passing upon his credibility as a witness. There was no objection to such instruction. The conviction seems to have been regarded throughout the trial as bearing only on the impeachment of Harper. No point having been made in the court below that he was an incompetent witness we cannot assume that he was such; the presumption under the record would be either that his competency had been restored, or that the *verbal* proof of his conviction of a felony was permitted for impeachment purposes only and not to disqualify him. Price v. State, 147 S. W. 243; Brown v. State, 101 Tex. Cr. R. 63, 274 S. W. 588; Watts v. State, 67 Tex. Cr. R. 4, 148 S. W. 310; Harris v. State, 67 Tex. Cr. R. 423, 148 S. W. 1071. For other authorities

see Note 26, Art. 708, Vernon's Ann. Tex. C. C. P. It is not necessary to discuss whether an unpardoned convict, not in the penitentiary at the time of trial, is competent to testify. We only refer to subdivision 3, Art. 708, C. C. P., and the amendment of such subdivision by the 39th Legislature (1st C. S.), Chapter 13, page 20, which was subsequent to the opinion in Alexander's Case, 103 Tex. Cr. R. 620, 281 S. W. 852.

The other questions suggested have already been considered.

The request for leave to file second motion for rehearing is denied.

*Denied.*