## J. J. TRENTHAM v. G. W. MOORE.

(*Knoxville.* September Term, 1903.)

1. **PRIVILEGES.** Word "shave" in reference to buying securities defined.

   The word "shave" in the revenue statute of 1901 (Acts 1901, ch. 128, sec. 4, p. 219) means simply the buying of the evidences of indebtedness at a discount, without reference to the question whether any of such securities were created for the purpose of being discounted. (*Post,* p. 351.)

   Acts cited and construed: 1901, ch. 128, sec. 4, p. 219.

   Case cited and distinguished: Wetmore v. Brien, 3 Head, 723-727.

2. **SAME.** For purposes of taxation defined.

   A privilege is whatever business, pursuit, or vocation affecting the public, the legislature may declare to be a privilege and tax as such. (*Post, pp.* 351-353.)

   Constitution cited and construed: Art. 2, sec. 28.

   Cases cited and approved: Mabry v. Tarver, 1 Hum., 94, 98; Cate v. State, 3 Sneed, 121; French v. Baker, 4 Sneed, 195; Robertson v. Heneger, 5 Sneed, 257; Mayor v. Guest, 3 Head, 414; State v. Schlier, 3 Heis., 283; Jenkins v. Ewin, 8 Heis., 475; Wiltse v. State, 8 Heis., 544, 547; Clarke v. Montague, 3 Lea, 274-277; Dun v. Cullen, 13 Lea, 202, 204; Phillips v. Lewis, 3 Shannon's Cases, 230; Pullman v. Gaines, 3 Tenn. Chy., 591; Kurth v. State, 86 Tenn., 134, 136; Turnpike Cases, 92 Tenn., 369, 372; Railroad v. Harris, 99 Tenn., 702, 703.

3. **SAME.** Same. Single act is not, when; and not to be taxed.

   The legislature can not tax a single act, *per se,* as a privilege in as much as such act, in the nature of things, can not, in and of itself, constitute a business, vocation, or pursuit. There is

Trentham v. Moore.

no privilege to be taxed, unless a business is made of it.  (*Post,*
   *p.* 353.)

   Acts cited and construed:   1901, ch. 128, secs. 14 and 16.

4.  **SAME.** Same. Same. **Words in statute taxing acts not made
   a business of are nugatory.**
   The words "whether they make a business of it, or .not," in a
      revenue statute providing that any person exercising any of the
      enumerated privileges must pay ʻthe prescribed tax for the ex-
      ercise thereof, whether they make a business of it, or not, are
      nugatory.  (*Post, p.* 353.)

   Acts cited and construel: 1901,. ch. 128, secs. 14 and 16.

5.  **SAME.** Single act as evidence of the exercise of a privilege.
   A single act characteristic of any of the privileges created by the
      legislature raises a *prima facie* presumption of an exercise of
      the privilege, and in some cases a single act may be conclusive
      evidence of the exercise of a privilege, as where a previous
      preparation is required in order to exercise the privilege, and
      such preparation is made, and thereafter single act performed.
      (*Post, pp.* 353-355.)

6.  **SAME.** Buying a single note is not taxable, when; case in
   judgment.
   Where a person not holding himself out to the public, directly or
      indirectly, as a dealer in securities, casually buys a single note,
      without seeking the transaction, he is not subject to the priv-
      ilege tax for shaving notes.


FROM HAMBLEN.


   Appeal from the Circuit Court of Hamblen County.—
G. McHenderson, Judge.

C. W. MARGRAVES, for Trentham.

DICKSON & TAYLOR, for Moore.

———

MR. JUSTICE NEIL delivered the opinion of the Court.

This case was tried in the court below upon the following agreed state of facts:

"It is agreed: That, for a valuable consideration, the defendant did on the nineteenth day of November, 1901, execute and deliver to one T. F. Harmon, of Hamblen county, Tennessee, his certain promissory negotiable note for $37.50, due on the first day of October, 1902; the same being the note attached to the magistrate's warrant in this case, and which is sued on in this action; that before the maturity of said note it was purchased from said T. F. Harmon by the plaintiff for the sum of $20, which was paid in cash, and without notice of any offsets against the same; that before purchasing said note plaintiff had a conversation with defendant in regard to the note; that plaintiff told defendant that the holder (Harmon) was asking him (plaintiff) to purchase the same, and plaintiff asked the defendant about the note being a good note; that defendant told plaintiff it was a good note, and for him to buy it; that he (defendant) would as soon pay the note to plaintiff as any one else; that, after this conversation with defendant, plaintiff purchased said note as aforesaid, paying therefor $20 in cash, and that such purchase was before ma-

turity of said note; that on May 21, 1902, and after plaintiff had purchased said note, the defendant paid on the same the sum of $2.20, which is indorsed as a credit on the back of said note, and that no other payments have been made on said note; that said note was not made for the purpose of being discounted or sold, but grew out of a bona fide transaction between said T. F. Harmon and the defendant.

"It is further agreed that the said transaction of the purchase of said note was begun and completed in Hamblen county, Tennessee; that plaintiff and defendant are residents of said county; that said Harmon at the date of said purchase was a resident of said county also, but that he is now in the West; that at the date of the purchase of said note by plaintiff he had not taken out a license to shave notes or deal in securities in Hamblen county, or any other county in Tennessee, and that he has not now, or ever had, such license; that plaintiff is a farmer, and does not carry on the business of shaving notes or dealing in securities; and that this is the only transaction of this character he has ever had."

The questions made in the case arise under the following provisions of Acts 1901, p. 199, c. 128, viz.: Among privileges is classed dealing in securities. In this part of the act the following provision is made: "Shaving notes, accounts, judgments, or evidences of indebtedness is hereby classed and held to be dealing in securities."

Section 14, p. 227, of the act, reads as follows:

"Be it further enacted, that any and all parties, firms and corporations exercising any of the foregoing privileges must pay the tax as set forth in this act for the exercise of such privileges, whether they make a business of it, or not, unless otherwise provided, and this act shall not be so construed as to exempt any person, firm or corporation whatever exercising any of the foregoing privileges, from the payment of the tax herein prescribed for the exercise of said privileges as herein provided, and except as provided in chapter 121 of the Acts of 1869 and 1870, excepting State and county fairs and their tenants."

Section 16, p. 227, of the act, reads as follows:

"Be it further enacted, that it is hereby declared a misdemeanor for exercising any of the foregoing privileges without first paying the taxes prescribed for the exercise of the same, and all parties so offending shall be liable to a fine not less than $50.00, not more than $500.00, for each day such privilege is exercised without license; but this inhibition shall not apply to any person, firm or corporation engaged in interstate commerce."

Action was brought upon the note above referred to before a justice of the peace, judgment rendered by him, appeal taken to the circuit court, and the cause was there tried by the circuit judge without the intervention of a jury. The defense there made was that the note was uncollectible, because it was purchased by the defendant in

Trentham v. Moore.

error in violation of law. The circuit judge decided the case in favor of the defendant in error, and the plaintiff in error appealed, and has assigned errors.

The question to be determined is whether the single purchase of a note, made under the circumstances stated in the agreement, made out a case falling within the statute.

We are referred by counsel to the case of *Wetmore* v. *Brien*, 3 Head, 723-727, for a definition of the word "shave," as applied to notes. The definition indicated in that case is buying at a discount notes made expressly for the purpose of being sold in that way, for less than their face value. This definition, however, is too narrow for the act of 1901, because it would be wholly inappropriate to speak of a judgment as having been rendered or an account having been made for the purpose of being discounted. We think, on the contrary, that the word "shave," in the act under consideration, means simply the buying of the paper referred to—"notes, accounts, judgments, or evidences of indebtedness"—at a discount, without reference to the question whether any of them were created for the purpose of being discounted.

The next point to be settled is the meaning of the words, "privilege" and "privileges," as used in our tax acts and in the constitution. This is of special importance, in view of the provision in section 14, p. 227, that all persons exercising any of the privileges created

by the act must pay the tax, "whether they make a busi-
ness of it or not."

We have numerous cases upon the subject. *Mabry* v.
*Tarver,* 1 Hum., 94, 98; *Cate* v. *State,* 3 Sneed, 121;
*French* v. *Baker,* 4 Sneed, 195; *Robertson* v. *Heneger,*
5 Sneed, 257; *Mayor* v. *Guest,* 3 Head, 414; *State* v.
*Schlier,* 3 Heisk., 283; *Jenkins* v. *Ewin,* 8 Heisk., 475;
*Wiltse* v. *State,* 8 Heisk., 544, 547; *Clarke* v. *Montague,*
3 Lea, 274-277; *Dun* v. *Cullen,* 13 Lea, 202, 204; *Phillips*
v. *Lewis,* 3 Shannon's Cas., 230; *Pullman* v. *Gaines,* 3
Tenn. Ch., 591; *Kurth* v. *State,* 86 Tenn., 134, 136, 5 S.
W.,593; *Turnpike Cases,* 92 Tenn., 369, 372, 22 S. W.,75;
*Railroad* v. *Harris,* 99 Tenn., 702, 703, 43 S. W., 115, 53
L. R. A., 921.

There is an apparent conflict between some of the
earlier cases and the later ones, but the result of the
later cases is that a privilege is whatever business, pur-
suit, or avocation, affecting the public, the legislature
may choose to declare to be a privilege, and to tax as
such. *Turnpike Cases,* 92 Tenn., 369, 372, 22 S. W., 75;
*Phillips* v. *Lewis,* 3 Shannon's Cas., 230; *Clark* v. *Monta-
gue,* 3 Lea, 274-277; *Dun* v. *Cullen,* 13 Lea, 202, 204;
*Kurth* v. *State,* 86 Tenn., 134, 136, 5 S. W., 593; *Railroad*
v. *Harris,* 99 Tenn., 702, 703, 43 S. W. 115, 53 L. R. A.,
921.

This is held to be a sound construction of the word
"privileges," appearing in that portion of article 2, sec-
tion 28, of the constitution of this State, which provides
that "the legislature shall have power to tax merchants,

peddlers, and privileges in such manner as they may from time to time direct." 92 Tenn., 372, 22 S. W., 75. Therefore, although, as held in *Jenkins* v. *Ewin,* 8 Heisk., 478, the constitution did not confer upon the legislature the power to tax privileges, but only recognized its right to do so, yet the use of the word in the sense above indicated, which we hold is its true meaning, as shown in *Phillips* v. *Lewis,* supra, and other cases, indicates what the power was which the legislature had and exercised.

It follows that the legislature cannot tax a single act, *per se,* as a privilege, inasmuch as such act, in the nature of things, cannot, in and of itself, constitute a business, avocation, or pursuit. Hence, it is a matter of importance "whether they make a business of it, or not," since if they do not, there is no privilege to be subjected to taxation. This portion of the statute must, therefore, be held nugatory.

Yet the proof of a single act which is characteristic of any of the privileges created by the legislature is by no means unimportant, because evidence of such act necessarily casts the burden of proof upon the defendant to show that he was not in fact exercising the privilege; that is, engaged in a business or occupation of the kind indicated by the act. The doing of such act makes a *prima facie* case against him.

Indeed, the doing of a single act may itself be conclusive evidence of the fact of one's entry upon a given business, as where a merchant, after having procured his

goods and placed them in his store, opens his doors and makes one sale, or where an abstract company, after having prepared its books of reference and procured its office, issued one abstract, or where a photographer, after having prepared himself for business, takes one picture, or an auctioneer sells, as such, one article, or a real estate agent makes one sale, and so on.

In entering upon a business there is a union of acts and intentions—the purpose to enter thereon, and the consummation of that purpose by making a beginning, performing the initial act.

There must always be some initial act of business, and it may well be inferred that any single act characteristic of a business taxed by the legislature as a privilege, is the initial act of such business, and that the party, by doing the act, has placed himself within the statute, and the duty devolves upon him to introduce facts in evidence sufficient to negative this inference.

Applying the rule to the facts of the present case, we are of the opinion that the inference of an intention to enter upon the business of shaving notes or dealing in securities, deducible from the single act of buying the note referred to, is negatived by the fact that the transaction referred to is the only one of the kind that the plaintiff ever had; that he did not hold himself out to the public, directly or indirectly, as such dealer; and that the transaction in question was not sought by him, but was only casual.

We may add that we attach no importance to the

Robertson & Hobbs v. Cayard.

statement in the agreement that "plaintiff does not carry on the business of shaving notes or dealing in securities." This must always be a conclusion of law, to be judged of by the court upon the facts proven.

On the grounds above stated, we are of the opinion that there was no error in the judgment of the court below, and it is affirmed.