## MYERS v. FULMER.

Opinion delivered December 4, 1922.

1. APPEAL AND ERROR—ABSTRACT OF TESTIMONY.—On appeal the rules of the Supreme Court require the appellant to abstract the testimony of witnesses responsive to the issues joined which are involved on the appeal; and where there was no attempt made to follow the rule, it must be presumed that the decree on those issues was supported by testimony not abstracted.

2. LICENSES—NOTE SHAVERS.—Rev. Act of Tenn. of 1919, §§ 4, 16, requiring the procurement of a license by note shavers, does not apply to one who occasionally invests in notes or other securities.

Appeal from St. Francis Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*Stickley & Fitzhugh,* for appellant.

The notes are unenforceable in this State, as they would be in Tennessee, where they were made, and were to be paid, for the reason that in that State a person, firm or corporation, buying or selling notes is required by statute to pay a privilege tax, a violation of which act by failure to pay the privilege license not only subjects the offender to prosecution for misdemeanor, but also renders the note unenforceable. See Public Acts, Tennessee, 1919, chap. 134, §§ 4, and sub-section thereof and § 16; 118 Tenn., 115; 111 Tenn. 346. The opinion in the case last cited held that proof of a single act which is characteristic of any of the privileges created by the act casts the burden on the defendant to show that he was not in fact exercising the privilege. See also 139 Tenn. 677; 87 Tenn. 45; 8 Pickle, 593; 12 *Id.* 714; 19 *Id.* 264.

The validity of the note and the lien securing the same will, in this case, be determined by the laws of Tennessee; and if the contract is invalid, and not enforceable in that State, it will not be enforced in Arkansas. 61 Ark. 329; 66 *Id.* 77; 70 *Id.* 493; 69 *Id.* 352; 44 *Id.* 213; *Id.* 230; 46 *Id.* 66; 14 *Id.* 189; 25 *Id.* 261; 40 *Id.* 423; 33 *Id.* 645; 22 *Id.* 125; 47 *Id.* 54; 60 *Id.* 269; 126 *Id.* 14; 129 *Id.* 384; 127 *Id.* 577; Jones on Mortgages, 3rd

ed. 84, § 110; *Id.* 481, § 610; 6 Law ed. (U. S.) 343; 7 *Id.* 833; 12 *Id.* 992; 89 Ark. 209.

*Jas. R. McDowell,* for appellee, Fulmer.

The finding of the chancellor to the effect that plaintiff, Fulmer, was entitled to foreclose his mortgage lien in the courts of Arkansas was correct.

1. The suit is a proceeding *in rem* and not *in personam,* and is maintainable in this State. The remedy and procedure are governed by the *lex fori.* 5 R. C. L. 941, § 28; *Id.* 925-6-7, §§ 20 and 21; 22 Am. and Eng. Enc. of L., 1337; 19 R. C. L. 524, § 325; 12 C. J. 457; 90 Ark. 351; 119 S. W. 75; 23 L. R. A. (N. S.) 659, Syl. 3.; 1 Jones on Mortgages, 7th ed., § 661, pp. 1092-1093.

2. The courts of Arkansas will not enforce penalties prescribed by the statute of another State, even though the contract sued on is construed by the laws of that other State. The act relied on by appellant is penal. 5 R. C. L. § 126, p. 1033 *et seq.*; 83 Ark. 240; 103 S. W. 185; 96 Ark. 105; 131 S. W. 208; 121 Ark. 59; 180 S. W. 470; 89 Ark. 195; 115 S. W. 1134, 1140; 25 Cyc. 633.

3. Fulmer is not a broker or security dealer, as a matter of law or of fact, and is not liable for the privilege tax under the Tennessee statute. 84 Tenn. 75; *Id.* 118; 19 Cyc. 186; 33 Ark. 436, 444; 64 S. W. 632-633; Words and Phrases "Broker," 2nd series, vol. 1, pp. 504-505; *Id.* vol. 3, 2d series, 685; Constitution of Tennessee, Art. 2, § 28, note 151; 3 Shannon's Cases, 242-245; 3 Cates, 346; 76 S. W. 904; 2 Pickle, 134; 5 S. W. 593; S. Cates, 98; 93 S. W. 100; 10 Cates 129; 101 S. W. 424; 570; 188 S. W. 795; 77 So. 189; 116 Miss. 424; 106 Miss. 199; 63 So. 412; 50 L. R. A. (N. S.) 421; 17 R. C. L. 558; §§ 72, 93; L. R. A. 1915-B, 851, Syl. 3.

*M. B. Norfleet, Jr.,* for Linder Bros., interveners.

Humphreys, J. This is an appeal by the respective parties from certain parts of the decree rendered by the chancery court of St. Francis County.

Appellant, W. B. Myers, appealed from that part of the decree in which he was adjudged to pay appellee, J. D. Fulmer, the sum of $16,072.72, and for which a lien and foreclosure were declared against 720 acres of land in said county purchased by Myers from Jere Belote.

Appellee, J. D. Fulmer, appealed from that part of the decree awarding W. B. Myers a credit of $4,725 upon said judgment aforesaid, on account of the difference in value between the tracts of land sold by Belote to W. B. Myers and M. S. Boyd, which Myers and Mrs. Boyd had agreed to equalize, the court having found that Fulmer purchased the Boyd tract of land with knowledge of said equalization agreement.

Appellant, Myers, and appellee, Fulmer, appealed from that part of the decree awarding appellees, Linder Bros., who were interveners below, liens to the amount of $2,680.20 on eleven houses, five of which were erected on the Myers and six on the Boyd land.

In order to better understand the parts of the decree from which appeals have been prosecuted, it may be well to state that the Myers tract of land consisted of the west 720 acres and the Boyd tract of the east 720 acres of the entire tract of 1,440 acres formerly owned by Evander Williams. He sold the entire tract to Jere Belote and retained a lien upon all of it for a considerable portion of the purchase money. His lien is still in effect and not questioned in this litigation. Belote sold the east one-half of the tract to Mrs. Boyd and the west one-half to Myers, with the understanding between Myers and Mrs. Boyd that she would make certain improvements upon Myers' part so as to equalize the value of the two tracts. As a part of the consideration for the west 720 acres, Myers assumed a part of Belote's indebtedness to Evander Williams, and in evidence thereof executed five notes in the sum of $3,165.48 each, payable to his own order, secured by mortgage upon the land, and indorsed them to Belote, who sold them at a discount to appellant, Fulmer. Fulmer afterwards bought the Boyd tract of land, and,

it was alleged, with a full knowledge of the equalization agreement between Mrs. Boyd and Myers. Myers failed to pay the first note when it became due, and subsequently this suit was instituted. An intervention was filed by Linder Bros. to enforce a lien upon certain houses on said lands for materials furnished to construct them. The intervention was contested by both Myers and Fulmer. Issue was joined between Fulmer and Myers as to whether Myers was entitled to a credit for improvements which Mrs. Boyd had agreed to make upon his land to equalize the value of the two tracts. The main defense interposed by appellant, Myers, to the suit upon the notes and for foreclosure, and the only one upon which a reversal of decree is sought, consisted in the averment "that at the time appellee, J. D. Fulmer, purchased from the said Jere Belote said five notes set out and described in the original complaint, referred to in the amended complaint, there was, is now, and has been for a number of years, a statute law in the State of Tennessee, declaring it to be a privilege for any person, firm or corporation to engage in the business of buying or selling notes, bonds, stocks, or other securities, and providing that such person or persons so engaged shall pay a privilege tax, fixed upon a graduated scale; that said statute law provides that any person, firm, or corporation engaged in said business of buying or selling said securities without the payment of said tax shall be guilty of a misdemeanor, and subject to a fine of not less than $10 nor more than $50 for each day said privilege is exercised without the payment of said tax; that said law was in full force and effect at the time said appellee purchased said notes, the same being sec. 4 of chapter 134 of the Public Acts of the General Assembly of the State of Tennessee for the year 1919." The notes in controversy were executed in Tennessee, were payable at the Union & Planters' Bank in Memphis, Tennessee, and were purchased by Fulmer from Myers in Tennessee. At that time both Fulmer and Myers were residents of

that State. Testimony was heard by the court upon the issues joined.

The appellee, J. D. Fulmer, earnestly contends that the court erred in allowing appellant, Myers, a credit of $4,725 upon the amount adjudged to him on the notes, and also in allowing a lien for $2,680.28 against the improvements upon the lands in favor of the interveners. It is impossible, without exploring the record, to ascertain whether the court's findings of fact upon these issues are contrary to the weight of the evidence. The rules of this court require the complaining party to abstract the testimony of the several witnesses responsive to the issues joined, which are involved on the appeal. Said appellee has made no attempt to do this. We must presume the decree of the court upon these issues is supported by the weight of the unabstracted testimony in the record.

Appellant, Myers, insists that the court erred in not repelling appellee, Fulmer, from the court, on the alleged ground that he violated the revenue law of Tennessee in buying the notes in controversy, without having first procured a license to do so. When the notes were purchased, the revenue act in force in Tennessee, in so far as applicable to brokers and security dealers, is as follows:

"Section 4. Be it further enacted, that each vocation, occupation, and business hereinafter named in this section is hereby declared to be a privilege, and the rate of taxation on such privilege shall be as hereinafter fixed, which privilege tax shall be paid to the county court clerk, as provided by law, for the collection of revenue."

A sub-section of section 4: "Brokers and Security Dealers other than Real Estate or Merchandise.—Every person, firm or corporation, or agent engaged in buying or selling notes, stocks, bonds, or other securities, in cities, towns, or taxing districts of 60,000 inhabitants or over, each per annum $100. In cities, taxing districts or towns of from 20,000 to 60,000, each per annum $50. In

cities, taxing districts or towns of from 20,000 inhabitants and under, $25.''

"Section 16. That it is hereby a misdemeanor for exercising any of the foregoing privileges without first paying the taxes prescribed for the exercise of the same, and all parties so offending shall be liable for a fine of not less than $10 nor more than $50 for each day such privilege is exercised without license; but this inhibition shall not apply to any person, firm, or corporation engaged in interstate commerce.'' We do not think the language of the act broad enough to include one who occasionally invests his money in notes or other securities. If it were, that portion of the act would be nugatory, because the Legislature had no power to impose a privilege tax upon the purchase or ownership of property. Unless the acquisition or sale of property is exercised so as to make a business of it, the privilege cannot be taxed. In the construction of a clause in the revenue act of 1901, attempting to define brokers and dealers, the Supreme Court of Tennessee restricted the privilege tax to those engaged in such business. The clause under construction was as follows: "Shaving notes, accounts, judgments, or evidences of indebtedness is hereby classed and held to be dealing in securities.'' In interpreting the clause as being applicable only to a business, in the case of *Trentham* v. *Moore,* 111 Tenn. 346, Mr. Justice WEIL said:

"The words attempting to tax the exercise of a privilege where a business is not made of it are nugatory. The Legislature cannot tax a single act, *per se,* as a privilege, inasmuch as such act, in the very nature of things, cannot, in and of itself, constitute a business, occupation, pursuit or vocation. There is no privilege to be taxed, unless it is exercised so as to make a business out of it.'' The clause of the act of 1919, relating to dealers in securities, has not been construed by the Supreme Court of Tennessee. We are quite sure the purpose and intent of the act was to impose a privilege tax upon those en-

gaged in the business of buying or selling securities, and not upon persons buying notes for investment only. Especially is this our construction of the act in view of the interpretation placed upon a similar, but stronger act, by the Supreme Court of Tennessee in the cases of *Trentham* v. *Moore, supra,* and *Gilley* v. *Harrell,* 118 Tenn. 115. Upon the authority of those cases appellant also contends that the proof in the instant case establishes that Fulmer was a dealer in securities as defined above. Those two cases laid down a rule of evidence to the effect that proof of the purchase of one note at a discount would make a *prima facie* case that the purchaser was a dealer in securities, and put the burden of proof on him to show to the contrary. That rule was announced under a statute designating a dealer in securities as being one who shaved notes, and in a case where the purchaser, Gilly, admitted he traded in notes. Even if the rule of evidence laid down for the enforcement of the revenue act of 1901 should be adopted as the correct rule for the enforcement of the revenue act of 1919, we think, in the instant case, appellee, Fulmer, has successfully met the burden. The substance of his testimony was to the effect that he purchased the notes at a discount for an investment; that he did not deal in securities as a business; that he was engaged regularly in the cotton business, and only bought notes when he had idle money, and then for investment only; that he had never bought and sold notes in his life; that he had purchased a number of notes for investment during the last thirty years, but that the notes in controversy and some of the Boyd notes were the only ones he had purchased for the past two years. We think his statement that he purchased notes as a side line only meant, when construed along with his other statements, that he did not purchase notes in connection with his business, but for investment outside of and disconnected from his business.

No error appearing, the decree is affirmed.